IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. CR-02-27-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| BENJAMIN QUINONEZ, aka | ) | |
| Benjamin Quinonez Jusio, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Ninth Circuit remanded this case for further proceedings consistent with

*United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc).  *See*

Docket Nos. 125 and 126.  Defendant subsequently filed a Sentencing

Memorandum (Docket No. 128) and a Supplemental Sentencing Memorandum

(Docket No. 129) requesting resentencing to which the Government filed a

Response (Docket No. 135).  *Ameline* requires a district court on remand to

determine if it would have imposed a materially different sentence under advisory

guidelines.

For the reasons set forth below, the Court has determined that it would not

have imposed a materially different sentence under advisory guidelines.  Thus,

Defendant's original sentence stands, subject to appellate review based on the

**Memorandum Decision and Order - 1**

*Booker* reasonableness standard.  *See Ameline,* 409 F.3d at 1074-75; 1085.

## BACKGROUND

On May 16, 2003, following acceptance of his plea of guilty, the Court sentenced Defendant to concurrent terms of imprisonment of 480 months on Count 2 (possession with intent to distribute methamphetamine)  and 240 months on Count 3 (money laundering).  *Judgment* (Docket No. 101).  The Presentence Report ("PSR") had calculated a base offense level of 38, a 2-level enhancement because the offense of conviction was 18 U.S.C. § 1956 (money laundering), and a 3-level enhancement for being an organizer and leader of the money laundering activities of five or more participants resulting in a total offense level of 43 with a criminal history category of III and a guideline range of life.  The PSR recommended against an adjustment for acceptance of responsibility because of the Probation Officer's belief that Defendant had falsely denied relevant conduct.  The PSR also recommended against the safety valve adjustment because of Defendant's role in the offense, the number of criminal history points, and failure to provide truthful information to the Government.  At sentencing, Defendant challenged those determinations as well as the drug quantity and relevant conduct.

The Court conducted a 3-day evidentiary hearing to resolve the disputed issues.  The Court ultimately fixed the base offense level at 36, applied a 4-level

increase (as opposed to the 3-level increase recommended in the PSR) for role in the offense, a 2-level enhancement for the money laundering offense, and a 2-level enhancement for obstruction of justice based on perjury at the sentencing hearing. Sent. Tr. 326-27.  The Court also determined that Defendant was not entitled to an adjustment for acceptance of responsibility, although it did grant a 2-level reduction for stipulation to deportation.  Sent. Tr. 328. The resulting guideline range based on an offense level of 42 with a criminal history category of III was 360 months to life.  Sent. Tr. at 328.  After giving serious consideration to a life sentence, the Court, as stated above, sentenced Defendant to 480 months on Count 2 and 240 months on Count 3.  Sent. Tr. 338; 340.

Defendant subsequently appealed his sentence to the Ninth Circuit Court of Appeals challenging the enhancement for obstruction of justice, the failure to grant an adjustment for acceptance of responsibility, the grouping of offenses, and the drug quantity calculation.  He also claimed ineffective assistance of counsel based on defense counsel's failure to object to the Court's sentencing determinations. The Ninth Circuit affirmed this Court's sentencing determinations but remanded for resentencing consistent with *Ameline*.

In accordance with the procedures set forth in *Ameline*, the Court provided Defendant with an opportunity to opt out of resentencing and sought briefs from

**Memorandum Decision and Order - 3**

counsel regarding whether or not the sentence should be materially different under advisory guidelines.  In his sentencing memorandum, Defendant contends that he should be resentenced because his attorney was ineffective at sentencing for failing to object to the Court's determinations and by going forward with an evidentiary hearing.  Furthermore, Defendant contends that he was advised by counsel that his sentence would be ten years or less.  In its Response, the Government contends that Defendant has not identified any 18 U.S.C.  § 3553(a) sentencing factors that would make a reduced sentence more reasonable than that imposed by the Court at the original sentencing and that Defendant's argument for resentencing is more in the nature of a 28 U.S.C. § 2255 claim for ineffective assistance of counsel.

## APPLICABLE LAW AND DISCUSSION

*Ameline* instructs that if a district court judge determines that the sentence imposed would not have differed materially under an advisory guideline scheme, the judge "should place on the record a decision not to resentence, with an appropriate explanation." *Id.* at 1085.

In making its determination on remand, the Court has examined the Presentence Report and Addendum prepared for the original sentencing, Defendant's and Government's sentencing memoranda (Dockets 15, 17, and 18) from the original sentencing, the transcript of the sentencing hearing, the briefs of

the parties on resentencing, and *Ameline*.

### A.   Nature and Circumstances of the Offense and History and Characteristics of Defendant.

A review of the Presentence Report indicates that Defendant was involved in drug trafficking in eastern Idaho and elsewhere between January, 1997, and February, 2002.  PSR ¶ 14.  He and fellow co-conspirators transported and delivered controlled substances, including cocaine, marijuana, and in excess of 500 grams of methamphetamine.  *Id*.  The controlled substances were transported in hidden compartments of vehicles and then stored in storage units in and around Pocatello, Idaho.  *Id*.  After the drugs were broken down and distributed, a portion of the proceeds was transferred via money wire to locations in the United States and Mexico utilizing fictitious names in order to conceal the origin of the funds. *Id*.  The extensive offense conduct is set forth in the Presentence Report at paragraphs 14-66.

Defendant was 39 years old at the time of sentencing.  PSR at 2.  He was born in Mexico and has two siblings, one of whom has been in a coma since 1989. PSR ¶¶ 113, 114.  His parents separated when he was 4 years old.   PSR ¶ 113.  He attended school for two years in Mexico, and his reading skills in Spanish are poor. PSR ¶ 122.  Defendant came to this country in 1982.  PSR ¶ 115.  Although he can understand some spoken English, he cannot speak English.  PSR ¶ 122.  He has

**Memorandum Decision and Order - 5**

five children with co-Defendant Gloria Barajas and one child with another woman. PSR ¶ 116, 117. Defendant's employment includes working in an auto body shop, raising horses and corn in Mexico as well as working on a ranch in California helping with horses. PSR ¶¶ 123 and 124. Defendant's criminal history included a driving under the influence conviction at the age of 27, and he committed the instant offense while on probation following that conviction. PSR ¶¶ 108 and 110.

### B.    Findings at Original Sentencing

Although the Ninth Circuit has affirmed this Court's sentencing determinations, a review of its comments in reaching some of those determinations supports the Court's conclusion that it would not have imposed a materially different sentence under advisory guidelines.

The PSR concluded that over 30,000 kilograms of marijuana should be attributed to Defendant resulting in an offense level of 38. Nevertheless, the testimony established that Defendant was only accountable for between 10,000 to 30,000 kilograms resulting in an offense level of 36. Sent. Tr. 319-20. In adopting the figure established by the evidence, the Court observed:

> I am going to point out right now that that's an extremely conservative estimate. I think that is without a doubt the most conservative estimate I could ever justify here, and I think it gives the Defendant the benefit of a doubt in a number of respects.

**Memorandum Decision and Order - 6**

> I have settled upon that figure relying only upon that which is clearly established by the evidence. I would say that that is probably a very small fraction of the actual drug quantities that Mr. Quinonez actually distributed in this area, which the Court could, I think, have justifiably found, based upon reliable evidence, if I were willing to simply rely upon circumstantial evidence and reasonable inferences from the actual evidence presented. But I have decided not to use just circumstantial evidence, but rely only upon hard evidence. The Court will take that into account, however, in deciding where within the Guideline range to impose sentence.

Sent. Tr. 320.

In finding the 4-level upward adjustment for role in the offense, the Court was "convinced that there were undoubtedly more" than the requisite five participants in Defendant's money laundering operation. Sent. Tr. 325. In finding the 2-level upward adjustment for obstruction of justice, the Court noted that Defendant committed perjury on the stand at sentencing as evidenced by the fact that his testimony was directly contradicted by a number of witnesses. Sent. Tr. 324; 326-27. The perjury together with Defendant's "frivolous challenge to relevant conduct" further indicated to the Court that the drug trafficking and money laundering operation was more extensive than reflected in the drug quantity determination.

In imposing a sentence of 480 months, the Court gave "serious consideration" to a life sentence but opined that federal prisons should not become

**Memorandum Decision and Order - 7**

"geriatric wards."  Sent. Tr. 338.  The Court explained to Defendant its reasons for
the sentence:

> I am not sentencing at the bottom end of the guideline
> range because, Mr. Quinonez, you have brought a poison
> into this community, a cancer, if you will, that has
> destroyed hundreds of lives, I'm sure, probably countless
> deaths of people through drug overdoses, drug addiction
> leading to other problems.  And with the drug quantities
> involved here, I can't even imagine the lives that were
> ruined because they became addicted through the drugs
> that you brought into this community. . . .
>
> It is clear that you have been dealing drugs for well over
> a decade.  You have ruined countless lives.  Your
> testimony raised questions in my mind as to whether you
> were remorseful.  If you were allowed out of prison at
> any time while you were within the productive years of
> your life, I am confident you would return to drug
> dealing.  And you have proven yourself to be a leader in
> drug dealing such that you have the ability to convince
> others to ruin their lives, so that makes you especially
> dangerous.

Sent. Tr. 339-41.

Clearly, the Court's comments at sentencing reveal its inclination to
sentence at the top end of the guidelines range were it not for the Court's concerns
that Defendant would become a burden on the prison system.

## C.      3553(a) Factors

In addition to the nature and circumstances of the offense and the history and
characteristics of Defendant discussed above, the Court has considered the other

**Memorandum Decision and Order - 8**

3553(a) factors as well in deciding whether it would have imposed a materially different sentence under advisory guidelines.  Of paramount concern to the Court in this case are those factors involving deterrence and protection of society.

As the Court's comments at the original sentencing amply demonstrate, Defendant's conduct "for well over a decade" had an extremely detrimental affect on countless people in the community.  The Court feels strongly that a 480-month sentence within the guideline range is necessary to promote respect for the law, to strongly deter not only others but also Defendant upon his release from engaging in drug trafficking and/or money laundering, and, most importantly, to protect the public in this and other communities from the deleterious impact of Defendant's demonstrated capability of directing wide-scale drug trafficking activity.  The sentence imposed should send a strong message to those involved in high level drug trafficking that their conduct will be met with harsh sentences.  To sentence Defendant to less time would risk Defendant's release, with good time credit, at an age when it would still be possible for him to engage at some level in drug trafficking activity.

A review of the 3553(a) factors indicates nothing that would warrant imposition of a lower sentence.  Furthermore, the Court at no time expressed frustration at being bound by the guidelines.  Rather, it imposed a sentence well

**Memorandum Decision and Order - 9**

above the low end of the guideline range and believes that sentence is reasonable under the facts and circumstances of this case.

### D.     Conclusion

Defendant has not brought to the Court's attention any ameliorative factors not before the Court at the time of the original sentencing.  Rather, he has offered numerous grounds of alleged ineffective assistance of counsel pertaining to both the plea and sentencing stages of the proceeding.  While these ineffective assistance of counsel claims may be asserted in a § 2255 proceeding, they are not factors to be considered when determining whether a sentence would be materially different under advisory guidelines.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the sentence imposed on May 16, 2003 (Docket No. 101) would not have been materially different under advisory guidelines.  Therefore, the original sentence stands, subject to appellate review based on the reasonableness standard established in *Booker*.



DATED:  **November 13, 2006**

Honorable B. Lynn Winmill
Chief U. S. District Judge